IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TERESA J. WILSON,**

        **Plaintiff,**

  **vs.**                                       **Civil Action 2:13-CV-832**
                                                    **Judge Economus**
                                                      **Magistrate Judge King**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

REPORT AND RECOMMENDATION

**I.**     **Background**

This is an action instituted under the provisions of 42 U.S.C. §§ 405(g), 1383(c), for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is now before the Court on plaintiff's *Statement of Specific Errors*, Doc. No. 16, and the Commissioner's *Memorandum in Opposition*, Doc. No. 23.

Plaintiff Teresa J. Wilson protectively filed applications for disability insurance benefits and Supplemental Security Income on May 5, 2010, alleging that she has been disabled since June 1, 2005,[1] as a result of degenerative disc disease, emphysema, Hepatitis C, arthritis, Epstein Barr syndrome, chronic fatigue syndrome and recurring blistering feet. *PageID* 333. The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

---

[1] Plaintiff, who was last insured for disability insurance benefits on June 30, 2008, later amended her alleged disability onset date to March 1, 2010. *PageID* 326. Because her insured status had lapsed by that date, plaintiff could not qualify for disability insurance benefits. *See* 20 C.F.R. §§ 404.130, 404.131, and 404.315.

Following an administrative hearing, at which plaintiff was represented by counsel, the administrative law judge issued a written decision concluding that plaintiff was not disabled from March 1, 2010, through the date of the administrative decision. *PageID* 131-47. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 9, 2013. *PageID* 55-60.

Plaintiff was 49 years of age on the date of the administrative decision. *PageID* 145, 328. She has an eighth grade, or "limited," education, is able to communicate in English, and has past relevant work as a forklift operator, food assembly worker and finish carpenter. *PageID* 145, 332, 334, 335, 343. Plaintiff has not engaged in substantial gainful activity since March 1, 2010, her amended date of onset of disability. *PageID* 132.

## II. Evidence of Record[2]

Plaintiff underwent an MRI of the cervical spine on March 26, 2010, which documented central disc/osteophyte protrusion at C3-C4 with associated moderate acquired canal stenosis and slight flattening of the cord; moderate acquired canal stenosis at C4-C5 with slight flattening of the cord; multilevel neural foraminal narrowing from C4-C5, C5-C6, and on the left at C6-C7; and mild acquired central canal stenosis at C5-C6 due to degenerative changes. *PageID* 419.

On April 14, 2010, Emily Johnson, M.D., of FCMH Medical and Surgical Associates, examined plaintiff for complaints of neck pain. Dr. Johnson noted a normal respiratory effort with both lungs normal to auscultation;

---

[2] Plaintiff does not challenge the administrative law judge's evaluation of her mental impairments. Accordingly, the Court will focus its review of the medical evidence on plaintiff's alleged exertional impairments.

plaintiff's gait and station were normal; both shoulders and elbow joints were normal to inspection and palpation and had full range of motion. Upper grip strength was 5/5 bilaterally. Dr. Johnson assessed cervical degenerative disk disease, referred plaintiff to physical therapy and prescribed medication. *PageID* 412-15.

Plaintiff attended physical therapy at Doctor's Hospital in April and May 2010 for neck and bilateral shoulder pain. *PageID* 599-625. On May 24, 2010, the physical therapist commented that plaintiff was not responding to treatment. *PageID* 607.

on June 4, 2010, Scott Reineck, D.O., a family practitioner, saw plaintiff for complaints of worsening neck pain beginning in 2004. The pain was aggravated by sitting. Plaintiff also complained of occasional numbness in her arms and hands. Plaintiff also complained of "knifelike" low back pain since approximately 2005, which worsened with sitting, sneezing and coughing and was relieved by lying flat. Plaintiff also complained of sleep difficulties. *PageID* 655. On examination, Dr. Reineck noted difficulty with range of motion in the neck. Reflexes in the upper extremities were normal, as was plaintiff's strength. There was some slight paresthesia with Phalen's test in 1st 3 digits, negative Tinel's test, no tenderness to palpation in the cervical or lumbar spine. However, Dr. Reineck noted difficulty in nearly all planes of motion. Straight leg raising in the supine and seated positions was negative. *PageID* 657. Given the "uncertain" etiology of her pain, Dr. Reineck prescribed medication and ordered further diagnostic testing. *PageID* 657-58.

On August 9, 2010, plaintiff presented to Thomas Best, M.D., Ph.D., at the OSU Sports Medicine Center, with complaints of chronic back pain and pain in the left shoulder. She reported problems sitting and standing.

3

Examination of the hips was normal bilaterally. Plaintiff exhibited 18/18 tender points for fibromyalgia.  Dr. Best diagnosed degenerative disc disease and fibromyalgia and referred plaintiff to the rheumatology department. *PageID* 633-35.

On August 18, 2010, the file was reviewed by state agency physician W. Jerry McCloud, M.D., who found that the record documented "[s]pine [d]isorders."  *PageID* 225.  According to Dr. McCloud, plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds and sit, stand or walk up to 6 hours in an 8-hour workday.  *PageID* 226. Plaintiff could occasionally climb ramps/stairs, ladders/ropes/scaffolds, stoop, kneel, crouch and crawl. *PageID* 226-27.

In September 2010, Dr. Reineck saw plaintiff for complaints of right hip pain that worsened with walking. She had experienced no recent injuries and took medication occasionally for back pain.  Plaintiff's BMI was 32.31. According to Dr. Reineck, plaintiff was in no acute distress and her lungs were clear bilaterally; she had positive standing flexion on the left, tenderness to palpation along right iliac crest and normal active and passive range of motion.  Dr. Reineck diagnosed right hip pain, somatic dysfunction, spinal stenosis in the cervical region, degenerative disc disease of the cervical spine, chronic obstructive pulmonary disease ("COPD"), obesity and Hepatitis C.  *PageID* 641-43.

Plaintiff underwent a functional ability screening by a physical therapist at Ohio Health Neighborhood Care on October 7, 2010. Plaintiff was found to be functioning at the sedentary level.  Sitting, standing, or walking were limited to five minutes at a time each, for less than 1-2 hours in an eight hour work day. She could lift 2-8 pounds continuously, 4-6 pounds frequently range and 7.5-15 pounds occasionally. Pushing and

pulling ranged from 12.5 to 30 pounds. Plaintiff could not squat to the floor to lift. She could occasionally bend, squat and reach and could use both feet for foot controls occasionally. Plaintiff rated her pre-test pain at a 6 on a 0-10 analog scale; her post-test pain, primarily neck and lower back pain, was reported at 9. The therapist also noted that plaintiff exhibited labored breathing. *PageID* 682.

Dr. Reineck expressly approved this assessment on October 19, 2010. *PageID* 677-81.

Consulting rheumatologist Kevin Hackshaw, M.D., evaluated plaintiff for fibromyalgia on December 9, 2010. *PageID* 684-88. Plaintiff noted worsening, diffuse pain since 2004. She experienced tingling in her hands and morning stiffness for an hour. Upon examination, Dr. Hackshaw elicited painful tender points in more than 11 of 18 sites with moderate hypalgesia. *PageID* 684.

On December 14, 2010, state agency physician Gerald Klyop, M.D., reviewed plaintiff's records and found documentation of spine disorders, affective disorders and anxiety disorders. PageID 240. Dr. Klyop agreed with the limitations found by Dr. McCloud. *PageID* 241-42.

On February 24, 2011, plaintiff was treated by Alex S. Tsai, D.O., a family practitioner, for routine follow-up. Plaintiff complained of right upper quadrant pain. On examination, Dr. Tsai found 12/18 tender points. He recommended daily low impact exercise. *PageID* 897-900.

Family practitioner Christopher Nixon, D.O., saw plaintiff on May 5, 2011, and found "[d]eteriorat[ing]" back and joint pain. Referring to imaging that showed degenerative joint disease with moderate canal stenosis and degenerative disc disease of the lumbar spine, Dr. Nixon commented that "there seems to be real pathology." According to Dr. Nixon, plaintiff

>    seems to have true pain with a legitimate source. With her
>    history of drug abuse and also Hep C - narcotics with APAP
>    (acetaminophen) seem like a poor choice. On the other hand, the
>    patient proclaims that she cannot tolerate diclofenac,
>    meloxicam, and now, tramadol. [Plaintiff] does not have
>    insurance so there are limited drug choices. Other options would
>    be TCA- which she has been on without benefit, topical which may
>    be costly, prednisone or Lyrica or Cymbalta.

*PageID* 904. Dr. Nixon discussed knee injections, but plaintiff "defers at this time." *Id*.

A June 2011 MRI of plaintiff's left knee showed a tear of the posterial horn of the medial meniscus, moderate to severe degenerative changes in the medial compartment, grade II-III, chondromalacia of the patella and a Baker's cyst. *PageID* 912.

Plaintiff was treated by family practitioner Mark Hagen, D.O., on July 6, 2011 for follow-up of her COPD, left knee pain and back pain.  He continued plaintiff's medications and referred her to an orthopedic specialist for her knee and to a neurosurgeon for her back pain. He also recommended a pulmonary evaluation.  *PageID* 914-16.

On July 7, 2011, Dr. Hagen completed three residual functional capacity questionnaires as to pulmonary issues, fibromyalgia and Hepatitis C. *PageID* 707-16. Dr. Hagen noted that plaintiff's symptoms of COPD included shortness of breath, wheezing, bronchitis, and cough. In evaluating plaintiff's fibromyalgia, Dr. Hagen stated that plaintiff was capable of "low stress jobs." *PageID* 713. He also opined that plaintiff could sit or stand for five minutes at a time for no more than two hours in an eight hour work day, and could stand/walk less than two hours in an eight hour work day; she could lift/carry no weight; she required unscheduled breaks every one-two hours for thirty to sixty minutes at a time to sit quietly; she should avoid even moderate exposure to pulmonary irritants. *PageID*

6

707-10. Plaintiff's pain was precipitated by weather changes, fatigue and movement/use. *PageID* 713. Plaintiff required a job that permitted a shift in position at will; she had "significant limitations" in performing repetitive reaching, handling, or fingering. *PageID* 711-15.  She would have good days and bad days, and would be absent from work more than four days per month.  *PageID* 715.

In July 2011, plaintiff was examined by spine specialist Mini B. Goddard, M.D., on referral from Dr. Reineck.  On clinical examination, Dr. Goddard noted a normal range of motion of the lumbar spine, but with complaints of pain on flexion.  Sensation of the legs was intact and symmetric and deep tendon reflexes were 2+/4 symmetrically to the knees and ankles.  Motor strength testing was 5/5.  Range of motion of the cervical spine was mildly decreased on rotation to the left.  Straight leg raising was negative bilaterally.  There was no atrophy of the lower extremities.  *PageID* 881.

On July 28, 2011, Dr. Hagen saw plaintiff for preoperative testing in connection with arthroscopic surgery for a left knee meniscal/cartilage tear. *PageID* 918-31.  According to Dr. Hagen, plaintiff was at moderate risk due to her respiratory status, but she was nevertheless an acceptable surgical candidate. *PageID* 922-23.

Plaintiff underwent left knee arthroscopic surgery to remove two meniscal tears and osteoarthritis on August 3, 2011.  *PageID* 932-57.

On February 2, 2012, Thomas Kovack, D.O., an orthopaedic specialist, examined plaintiff for complaints of right knee pain over the prior year. *PageID* 1029-32.  A January 2012 MRI of the right knee showed Grade 2-3 chondromalicia of the patella and mild tricompartmental arthritis with no

obvious meniscal tear. *PageID* 1032. Plaintiff underwent a right knee arthroscopy on February 15, 2012. *PageID* 1036-38.

On June 5, 2012, plaintiff's treating neurosurgeon, James Elder, M.D., reported that plaintiff suffers from progressive degenerative disc disease and severe spinal canal stenosis in her cervical spine. Dr. Elder anticipated a C3-5 anterior cervical diskectomy and fusion. *PageID* 1045.

**Appeals Council Exhibits:**

Dr. Elder examined plaintiff on March 27, 2012 and recommended flexion/extension films of the cervical and lumbar spine, a CT of the cervical spine, and an EMG of the left upper extremity. *PageID* 1413-14. That EMG documented remote left C-7 radiculopathy. *PageID* 1415-16. On June 5, 2012, Dr. Elder reviewed those test results and diagnosed significant degenerative changes in the cervical spine which, he opined, may be contributing to her symptoms. He discussed treatment options with plaintiff, including surgical intervention, *i.e.*, a C3-5 anterior cervical diskectomy and fusion and continued conservative management. Concluding that she had exhausted conservative management options, plaintiff opted for surgery. *PageID* 1417-18.

Plaintiff underwent C3-4 and C4-5 anterior cervical diskectomies and fusion on August 8, 2012. *PageID* 1370-86.

Plaintiff presented to the emergency room on August 28, 2012, for post-operative problems. *PageID* 1360-69. She felt unsteady. *PageID* 1360. Examination revealed no focal neurological signs, her neck was nontender and the surgical scar was healing well. *PageID* 1363. Plaintiff was tearful and cried during the neurological assessment and requested anxiety and

8

narcotic pain medication. Nursing notes indicated that plaintiff removed her cervical collar when alone. *PageID* 1363.

On September 18, 2012, Dr. Elder reported that plaintiff suffers from cervical stenosis and a herniated disc at C3-4 and C4-5 which conservative management had failed to control and for which she underwent an ACDF at C3-5 on August 8, 2012. According to Dr. Elder, plaintiff could not work for one year following the surgery. *PageID* 1359.

**III. Administrative Hearing and Decision**

At the administrative hearing, plaintiff testified that she has been diagnosed with Hepatitis C, emphysema/COPD, degenerative disc disease, cervical spinal stenosis, fibromyalgia and osteoarthritis. *PageID* 163. She stopped working because of pain and missing work. *PageID* 164. Her pain medications and her breathing inhalers for her COPD cause fatigue, weakness, thirst and frequent urination. *PageID* 166. She takes three or four naps per day. *PageID* 167.

Plaintiff described her neck pain as "a throbbing, aching pain at times that radiates into my left arm, my left shoulder, and down into my left arm. So severe that it -- I mean, I, I honestly -it feels like my arm's going to fall off." *PageID* 167.  The pain in her back radiates down her legs. *PageID* 168. Lying down helps to relieve the pain. *Id.* Sitting in one position too long, standing longer than five minutes, walking a distance greater than the house aggravates the pain. *Id.*  She cannot reach over her head. *PageID* 169.

Plaintiff estimated that she can sit for 2-3 minutes before having to change position;  she can stand for 2-3 minutes before needing to sit.

9

*PageID* 170.  She does not "go for walks." *Id*.  She used a cane for a while. *Id.*

Plaintiff lives with her daughter. *PageID* 170.  She spends her time walking around the house, reading, watching television in short increments and napping. PageID 171-72. She testified that she relies on her daughter to perform all household chores. *Id.*[1]  Plaintiff quit smoking two months prior to the administrative hearing. *PageID* 174.

The vocational expert testified that plaintiff's prior relevant work consisted of forklift operator, food assembly worker and finish carpenter. *PageID* 181-82. Asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity eventually found by the administrative law judge, the vocational expert testified that such an individual could perform plaintiff's past relevant work as a food assembly worker.  *PageID* 183. The individual could also perform such jobs as a bench assembler (700 jobs locally, 4,900 state-wide, 700,000 nationally); garment sorter (150 jobs locally, 1,050 state-wide, 150,000 nationally); and folder (200 jobs locally, 1,400 state-wide, 200,000 nationally). *PageID* 184.

In his written decision, the administrative law judge found that plaintiff's severe impairments consist of degenerative disc disease, osteoarthritis, bilateral meniscus tears, chronic obstructive pulmonary disease, fibromyalgia, and a generalized anxiety disorder.  *PageID* 137. These impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, and push or pull to the same extent using hand or foot controls, stand or walk about

---

[1] However, plaintiff also reported that she straightens the house, does some laundry and dishes and cares for grandchildren two days per week.  *PageID* 353, 379.

6 hours and sit about 6 hours in an 8 hour work day. She can occasionally climb ladders, ropes, scaffolds, ramps and stairs, stoop, kneel, crouch, and crawl, and work in a static work environment where changes are explained at the time of implementation.  *PageID* 137, 139.

In determining plaintiff's RFC, the administrative law judge accorded "great weight" to the opinions of the state agency physicians, Drs. McCloud and Klyop, finding that state agency reviewers are "well-qualified by reason of training and experience in reviewing an objective record and formulating an opinion as to limitations." *PageID* 144.  The administrative law judge afforded "little weight" to the opinions of plaintiff's treating physicians, finding those opinions to be "unsupported and inconsistent with the overall weight of clinical and diagnostic evidence." *PageID* 143.

> In spite of the claimant's considerable alleged physical and mental symptomatology and limitations, there is no medical opinion of record by treating practitioners to indicate that the claimant is prevented from all work activity or clinical or diagnostic evidence to support such a conclusion.  Even the claimant's treating physicians who severely limit[] her physically still state that despite those limitations the claimant would be capable of performing low stress jobs.

*PageID* 143. The administrative law judge also found that plaintiff's reported daily activities showed no more than moderate limitations and demonstrated an ability to perform work activities greater than the severe physical limitations assessed by Dr. Hagen. *Id.*

Relying on the testimony of the vocation expert, the administrative law judge found that plaintiff can perform her past relevant work as a food assembler and, alternatively, a significant number of jobs in the national economy. *PageID* 146. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security

Act from March 1, 2010, through the date of the administrative law judge's decision. *Id.*

**IV. Discussion**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In her *Statement of Specific Errors*, plaintiff challenges the administrative law judge's RFC for light work. *Statement of Errors*, *PageID* 1431. Plaintiff specifically argues that the administrative law judge

12

failed to give proper weight to the plaintiff's treating physicians and improperly relied on non-examining sources, the state agency physicians Drs. McCloud and Klyop. (*Id.* at *PageID* 1434). In the alternative, plaintiff asks that the matter be remanded pursuant to Sentence Six of 42 U.S.C. § 405(g) to consider new and material evidence. *Id.* at *PageID* 1436).[2]

The administrative law judge found that plaintiff could perform a reduced range of light exertion despite her severe impairments. *PageID* 139. "Light" exertion is defined as work that

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work you must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b). Plaintiff complains that, in making this finding, the administrative law judge failed to accord proper weight to the assessments of plaintiff's treating providers.

To be afforded controlling weight, the opinion of a treating physician must be well-supported by medically acceptable clinical and laboratory diagnostic techniques, and must not be inconsistent with other substantial evidence in the record. *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013); *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007); 20 C.F.R. § 416.927(d)(2).  Even where the administrative law judge declines to accord controlling weight to the opinion of a treating physician, the administrative law judge "must still determine how much weight is appropriate. . . ."  *Blakley v. Commissioner*

---

[2] Plaintiff also contends that the administrative law judge erred in finding that plaintiff had past relevant work as a food assembler. *Statement of Errors*, Doc. No. 16 at *PageID* 1431. Because the administrative law judge also found that plaintiff could perform other work that exists in significant numbers in the

of Social Security, 581 F.3d 399, 406 (6th Cir. 2009). In weighing the opinions of the treating physicians, the administrative law judge is required to consider such factors as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence, and its consistency with the record as a whole. 20 C.F.R. § 416.927(d)(2) – (6); Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004). Moreover, an administrative law judge must provide "good reasons" for discounting the opinions of a treating physician, i.e., "reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Gayheart, at 376; Rogers, at 242, citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5.

In October 2010, Dr. Reineck expressly adopted the opinion of a physical therapist who opined that plaintiff could sit, stand and walk for no more than five minutes at a time for a total of less than 1-2 hours per day; she could lift no more than 15 pounds occasionally. PageID 682; 677-81. In July 2011, Dr. Hagen opined that plaintiff's fibromyalgia limited her to sitting or standing for five minutes at a time for no more than two hours per day; she could stand or walk less than two hours per work day and could lift and carry no weight. PageID 707-10. Neither of these assessments is consistent with the RFC for a reduced range of light work found by the administrative law judge.

In finding an RFC for a reduced range of light work, the administrative law judge gave "little weight" to the opinions of plaintiff's treating providers, PageID 143, characterizing them as

---

national economy, PageID 146, the Court need not consider this contention.

> unsupported and inconsistent with the overall weight of clinical and diagnostic evidence and the claimant's reported daily activities. . . that show no more than moderate limitations on the claimant's ability to perform basic work functions and demonstrate an ability to perform work activities greater than the severe physical limitations assessed by this [sic] physician.

*Id.* Instead, the administrative law judge relied on the opinions of the state agency physicians, Drs. McCloud and Klyop. However, it is simply incorrect to characterize the record, as the administrative law judge did, as devoid of "medical opinion of record by treating practitioners to indicate that the claimant is prevented from all work activity. . . ." *PageID* 143. Certainly, Dr. Hagen's July 2011 assessment, which indicated that plaintiff could lift and carry no weight and could sit and stand for no more than five minutes at a time, *PageID* 707-10, and Dr. Reineck's October 2010 assessment, which indicated that plaintiff could lift up to 15 pounds only occasionally and could sit, stand or walk for no more than five minutes at a time, *PageID* 677-81, are inconsistent with substantial work activity. Moreover, it is unclear to this Court in what respect the opinions of Drs. Hagen and Reineck are unsupported by or inconsistent with the evidence. The failure to explain any such inconsistency therefore failed to serve the twin goals of the "good reasons" requirement, *i.e.,* to ensure adequate appellate review and to enable the claimant to understand the disposition of the claimant's case. *See Gayheart*, at 376.

It is not enough, moreover, that the administrative law judge relied on the opinions of the state agency physicians. Those physicians reviewed the record before significant medical records had been generated. For example, records relating to plaintiff's knee conditions, which required bilateral arthroscopic surgeries, to plaintiff's fibromyalgia, and to the progression of plaintiff's degenerative disc disease and severe spinal

15

canal stenosis of the cervical spine (for which plaintiff underwent a C3-4 and C4-5 anterior cervical diskectomies and fusion after the administrative hearing) were apparently no included in the record at the time of the reviews by Drs. McCloud and Klyop. The administrative law judge recognized this fact, but nevertheless accorded "[g]reat weight" to their opinions:

> The evidence received into the record after the reconsideration determination concerning the claimant's physical status did not provide any credible or objectively supported new and material information that would alter the State Agency's findings concerning the claimant's physical limitations.

*PageID* 144. This conclusion is simply unsupportable where the later medical evidence documents severe impairments not previously reflected in the record – *i.e.,* knee conditions that later required surgery and fibromyalgia that was determined by at least one treating physician to be disabling – and a serious progression of plaintiff's degenerative disc disease and stenosis of the cervical spine.

In short, the Court concludes that the matter must be remanded for further consideration of the opinions of plaintiff's treating providers.

It is therefore **RECOMMENDED** that the decision of the Commissioner be reversed and that the action be remanded, pursuant to Sentence 4 of 42 U.S.C. § 405(g) for further consideration of the opinions of plaintiff's treating providers.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1);

F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: June 24, 3014                                    *s/Norah McCann King*
                                                       Norah McCann King
                                                       United States Magistrate Judge